FILED
JAMES BONINI
CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

2005 AUG 19  P 4:47

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST DIV. COLUMBUS

| | | |
|---|---|---|
| Dennis Hawk | : | |
| 1974 Bashan Drive | | |
| Columbus, OH 43228 | : | Case No.: |
| | | 2:05 cv•787 |
| Plaintiff, | : | |
| | | JUDGE SARGUS |
| v | : | Judge  MAGISTRATE JUDGE KING |
| | | |
| Merck & Co., Inc., by its | : | |
| Statutory Agent, | | |
| CT Corporation System | : | **JURY DEMAND ENDORSED HEREIN** |
| 1300 East Ninth Street | | |
| Cleveland, Ohio 44114, | : | |
| | | |
| Defendant | : | |

## COMPLAINT

1.    Plaintiff is a United States citizen residing at 1974 Bashan Drive, Columbus, Franklin County, Ohio.

2.    Defendant Merck & Co., Inc. is a New Jersey corporation with its principal place of business in New Jersey.  Defendant is actively engaged in the business of testing, developing, manufacturing, distributing, licensing, labeling and marketing, directly or through third parties, the drug known as Vioxx.

### JURISDICTION AND VENUE

3.    The amount in controversy exceeds $150,000 exclusive of costs and interest, and diversity jurisdiction exists pursuant to 28 U.S.C. § 1332.

4.    Venue is proper in this jurisdiction.  Plaintiff resides in this jurisdiction.  Defendant does business in this jurisdiction.  Much of the conduct giving rise to liability in this

matter occurred in the State of Ohio.

### FIRST CAUSE OF ACTION

5.   Plaintiff states that after May 1999 through at least June 2003, possibly into September 2004, he was prescribed the medication Vioxx 25 mg, bid for arthritic pain, both as free samples from his doctor's office, and by formal prescription. Plaintiff states he took this medication completely unaware of any side effects or hazards relating to cardiovascular disease, stroke, COPD, emphysema, hypertension or fatigue.   Plaintiff states that over the course of his taking Vioxx these conditions developed or became dramatically worse.   Plaintiff states he was not aware of any hazards or risks relating to the taking of this medication until this medication was taken off the market in September 2004. At that time, he ceased taking this medication.

6.   Plaintiff states that from initial development of this product through its eventual removal from the market, Defendant engaged in an ongoing failure to fairly investigate and report risks, concealed and understated data proving or suggesting risks, and actively and fraudulently advertised and marketed the product with the express purpose of persuading the public and physicians its product was safe and effective.

7.   Plaintiff states the Defendant failed to exercise reasonable care to comply with the existing standards of care in its preparation, design, research, development, manufacturing, inspection, labeling, marketing, promotion and sale of Vioxx,

including its obligation to advise users of the risks and adverse side effects from the medication.

8.   Plaintiff states the Defendant failed to meet its duty to consumers to show reasonable care.  Defendant was aware of the risks to consumers caused by its failure to exercise such reasonable care.

9.   Defendant failed to design, test, and manufacture the product to insure individuals were protected from risks of injury. Defendant failed to issue proper warnings relating to side effects. Defendant failed to conduct adequate preclinical testing and post-marketing surveillance.  Defendant failed to adequately train and inform medical care providers on risks and contraindications for use of the medication.  Specifically, Defendant failed to warn Plaintiff and his healthcare providers of adverse side effects associated with use of Vioxx, including but not limited to stroke, heart attack, clotting disorders, COPD, emphysema, hypertension, and extreme fatigue.

10.  As a direct and proximate result of the above described negligence, Plaintiff took Vioxx from at least March 2001 through June 2003, a period of over two (2) years, resulting in aggravation of his preexisting cardiac condition, COPD, and emphysema, causing hypertension, stroke, extreme fatigue and clinical depression.  As a direct and proximate result of the above described negligence, the Plaintiff suffered the injuries described including the medical conditions described, permanent disability, shortened life

expectancy, dramatic medical and life care expenses, pain, suffering, loss of enjoyment of life, and premature death.

11. Plaintiff additionally states the product was defective in that it had an inadequate warning and that the product contained an implied warranty that it was of good quality, reasonably fit and safe for its stated purpose, which use was a medication for control of arthritis and muscular pain. Defendant breached these warranties in that the product was not fit for its intended and foreseeable use and was unreasonably dangerous.

12. Plaintiff states the Defendant expressly warranted to physicians, the FDA, and consumers though its merchant and advertising that the product was safe, without unreasonable or unusual risks. Defendant breached this express warrant. Plaintiff and Plaintiff's physicians reasonably relied on the representations of the Defendant and its agents that the product was safe for its intended use without any risks, dangers or side effects. Plaintiff states that at the time he took the described Vioxx, it was in the same condition it was at the time that it left the control of the manufacturer and had not been adulterated, modified, or otherwise changed.

WHEREFORE, Plaintiff requests fair and reasonable compensation from the Defendant for compensatory damages to be determined by a jury, such compensation not to exceed $100,000,000, and punitive damages to be determined, such compensation not to exceed $200,000,000 with interest, attorneys fees and costs.

### SECOND CAUSE OF ACTION

13. Plaintiff incorporates by reference the allegations in the First Case of Action as if fully restated herein.

14. Defendant is the manufacturer/supplier of Vioxx and placed it into the stream of commerce in a defective and unreasonably dangerous condition where foreseeable risks exceeded the benefits associated with the design and formulation of the product.

15. Vioxx was defective when it left the hands of the manufacturer and foreseeable risks exceeded benefits associated with the design or formulation.

16. Vioxx was unreasonably dangerous and was more dangerous than an ordinary consumer would expect.

17. Vioxx failed to have an adequate warning relating to limited clinical trials and limited knowledge about the safety and potential side effects of the product. The Defendant manufacturer continued to manufacture and supply the product as increasing information mounted proving the defects described above and proving the inadequacy of the warning described above, continuing to promote the product as safe and effective to both the consuming public and the medical community. As a direct and proximate result of the defective condition of this product, the Plaintiff suffered the injuries described including the medical conditions described, permanent disability, shortened life expectancy, dramatic medical and life care expenses, pain, suffering, loss of enjoyment of life,

and premature death.

WHEREFORE, Plaintiff requests fair and reasonable compensation from the Defendant for compensatory damages to be determined by a jury, such compensation not to exceed $100,000,000, and punitive damages to be determined, such compensation not to exceed $200,000,000 with interest, attorneys fees and costs.

### THIRD CAUSE OF ACTION

18. Plaintiff incorporates by reference the allegations in the First and Second Causes of Action as if fully restated herein.

19. Plaintiff states that the Defendant engaged in a pattern of fraudulent misrepresentation to Plaintiff and Plaintiff's physicians reasonably relied upon by Plaintiff and Plaintiff's doctors to Plaintiff's detriment.

20. Plaintiff states that Defendant misled Plaintiff, the medical community, and the public at large, making materially false representations about the safety of its product and failing to disclose and warn as mounting evidence gathered of the serious and significant risks associated with the use of its product, instead aggressively and intentionally downplaying the significance of these evidentiary studies with the express purpose of profiting and continuing to profit from the widespread use of this product with the specific and knowing purpose of putting profit ahead of public safety and ahead of the safety of Dennis Hawk, the Plaintiff in this case.

21. As a direct and proximate result of this fraudulent

misconduct, the Plaintiff has sustained the injuries as described above and is entitled to punitive damages in an amount to be determined in the trial of these proceedings.

WHEREFORE, Plaintiff requests fair and reasonable compensation from the Defendant for compensatory damages to be determined by a jury, such compensation not to exceed $100,000,000, and punitive damages to be determined, such compensation not to exceed $200,000,000 with interest, attorneys fees and costs.

<u>**DEMAND FOR TRIAL BY JURY**</u>

Plaintiff requests a jury to try this case.

Charles H. Bendig (0019934)
Wilcox, Schlosser & Bendig Co., LPA
4937 West Broad Street
Columbus, Ohio 43228
614/878-7251
614/878-6948 Fax
chuckbendig@yahoo.com
Attorney for Plaintiff